Wardlaw, J.
delivered the opinion of the Court.
This is the same case in which heretofore a motion was made to set aside the judgment, as irregular, for the interest or excess above $11721 11; which motion was refused, and an appeal from the refusal dismissed. In the opinion then given it is said, “ The case was one in which it was clearly proper that interest should be allowed.” “ The jury have ascertained and assessed the sum for which the defendant was liable on the 16th February, 1836, from which date they allow interest, and the Court has only to direct the Clerk to compute the interest.” If it had not then appeared that the case was a proper one for the allowance of interest, eo nomi-ne, the Court would have treated the finding of interest as a mere nullity, according to the course which was taken in Holmes v. Misroom and Ancrum v. Sloan. The defendant, by the motion, from the refusal of which he now appeals, in effect, (as I think will appear,) objects again to the plaintiff’s recovery of interest eo nomine ; but he now confines his objection to the interest which has accrued since the judgment, and attacks the execution instead of the judgment. His argument has been earnestly pressed, and deserves careful examination.
Without copies of papers, the following summary will shew the true state of the case. The bond by Bowie and several sureties was in the penalty of $20,000, conditioned that Bowie “ shall faithfully discharge the funds of the said Bank, which may be placed in his hands, for the purpose of discounting such drafts as he may be authorized, &c. — and shall faithfully account to the said Bank for all the funds placed in his hands for the purposes intended in the discharge of the duties *442 0f the said agency.” Against Bowie and each of his sureties, a separate action of debt was brought. The declaration was simply for the penalty of the bond, and with it was filed an account current between the plaintiff and Bowie, shewing a balance in Bowie’s hands, on 16th February, 1836, of $11,721 11. Non est factum was pleaded, and issue joined thereon. General performance was also pleaded ; a replication thereto (by careless pleading to which no objection was made) denied performance and tendered issue, which was joined. The verdict was “ we find the writing obligatory within mentioned to be the deed of the defendant, and (the condition thereof being submiited to us,) we assess the damages of the plaintiffs at $11721 11, with interest from 16th February, 1836.” The interest calculated to 18th July, 1838, when the judgment was signed, amounted to $13,635 55. In the 'postea it is declared that the jury found the writing obligatory to be the act and deed of defendant, and assessed the damages of plaintiff by reason of the breach of the condition, besides costs, to be $13,635 55; and judgment is entered for the debt (the penalty) and costs. Thefi.fa. requires the sheriff to levy the debt of $20,000, also $ for costs, and “ also the interest on $11,721 11, the principal sum of said damages, from 18th July, 1838,” until satisfaction. The defendant, by his motion now under consideration, moved that th efi.fa. should be amended in manner qs he has specified, and. that satisfaction should be entered : — it being admitted that- $13,-635 55, besides costs, had been paid, but that, if the collection of interest after judgment was properly authorized, something is still due to the plaintiff.
Act 1792,7 Stat. 28o!
6 Stat 4
A correct mode of entering the judgment would have been, (after a postea setting forth the verdict of the plaintiff upon the issues made, the submission of the condition “ and the special circumstances” to the jury, and the assessment of damages) to have entered, ideo consideratum est, that the plaintiff recover the penalty and costs, and that the judgment for “ the penalty stand as security for the sum assessed and costs.”
A correct form for th efi.fa. would have been, after recital of judgment recovered for the penalty, to stand as security for the sum assessed and costs, to have directed the levy of $13,635 55 and costs, and also (under the Act of 1815,) of ^ie interes£ on $ 11,721 11 from 18th July, 1838, until satisfaction.
But the forms which the plaintiff adopted attain the same end, and they could now be amended by order of the Court, if there was substantial need of amendment; if interest be collected after the judgment, they have required from the defendant nothing more than the most precise regularity would have required, and on that head there is no occasion for complaint.
2 Stat. 435.
The right to collect the interest now in question does not exist if it is not given by the Act of 1815.* It is said not to be given by that Act because “ the cause of action" in this case was not one. “ bearing interest,” but was a bond for performance of covenants. If we confine our view to the mere terms of the enactment made by the Act of 1815, and give an exact technical signification to every word, we should probably render it incongrous, or depart widely from its true meaning. “ Any bond,” — “ other cause of action,” — “ original cause of action,” — “ debt, obligation or other security,” — t; principal sum of the (cause of action) on which judgment shall be obtained,” — “ levy made,” — “ satisfaction entered,” — all require attention. Let it be remembered that the cause of action in assumpsit is the breach of the promise, and not the note or other evidence of the promise; and in debt on the penal bond, although the acknowledgment of indebtedness made by the writing obligatory is apparently the cause of action, yet after the condition is set forth, the breach oí that is the real cause of action; moreover, that in every case of debt on penal bond, the judgment is for the penalty; that before the stat. 9 Anne, c. 20, the defendant, after breach of the condition of a penal bond conditioned for payment of a less sum on a day certain, could not, without recourse to the Court of Equity, have compelled the plaintiff to discharge him from the penalty upon his payment of the condition and interest: and that after that statute, but before the Act of 1815, &fi. fa. after judgment upon such a money bond, directed the levy of the penalty without notice of the condition, and only by some private memorandum was the sheriff instructed to accept the condition and interest in discharge and satisfaction. By the Act “ the principal sum” is to bear the same interest “ as the original cause of action:” which shews that in the case of a penal money bond, if the condition be the principal, the bond *444 is not the original cause of action that was contemplated. «cause 0f action bearing interest” connected with “ principal of said debt, obligation or other security,” shews that any liability which bore interest, and which constituted a debt or was secured by any such security as is mentioned, falls within the purview of the Act. From all this it is apparent that the money sought to be recovered may be embraced in the phrase “ other cause of action,” and if that bore interest, it is immaterial whether the bond by which its payment was secured, was in one form or in another. Looking • to the whole scope and purpose of the Act the meaning seems to be this: — any sum of money which bore interest before judgment for it was recovered, shall continue to bear interest af-terwards until satisfaction shall be made. Let it be shewn that a sum of money which has been recovered, whether in debt or bond for performing covenants, in covenant, assump-sit, trover or other action, did not bear interest eo nomine before judgment, and it has been shewn that it cannot under the Act of 1815 bear interest after recovery. But to shew that a recovery has been had in an action on a bond for performance of covenants, is not of itself to shew that the principal of such recovery does not bear interest under the Act, unless it can be established that the payment of money bearing interest can in no case be secured by such a bond.
7 start 309
2 Spears, 476. ’
Every bond which is “for things other than the payment of money,” must, by the Act of 1792, be submitted to a jury “ which shall assess the debt or damages actually due.” It does not follow thence that in every such case interest is not allowed eo nomine, but is only resorted to by the jury at their discretion as a measure of damages, and that therefore the principal sum upon which the jury has calculated interest can in no such case be an interest-bearing demand.
That the recovery is of damages signifies nothing, for in every action of covenant, even every action of assumpsit, the recovery is only of damages. But the jury may assess “ debt or damages,” and where they have found a sum “ actually due” which bears interest, it might, if necessary, be always concluded that they Jr ad found a debt, even if they called it damages.
That the aid of a jury has been invoked, and reference to the Clerk for ascertainment of the sum due could not have been made under the Act of 1809, is equally indecisive: — for the unwritten acceptance of a bill of exchange cannot be referred to the Clerk, nor can a demand for money had and received, where there is no written acknowledgment, nor many other demands which when ascertained certainly bear interest. A bond conditioned for payment of a sum certain at a day certain requires no jury; but even a bond for payment of money only, if either the sum to be paid or the time of *445 payment be not expressed in the bond or some other writing connected therewith, must go to a jury, who may give tainty by drawing a conclusion from evidence, and who, when the conclusion has been attained, if that shews a liability for interest, are, in the calculation of interest, as much bound by the certainty they have reached, as by any certainty that might have been inserted in the writing. Thus, a penal bond is given conditioned for payment by the obligor upon demand, of the price at which J. S. shall purchase a horse from the obligee: — the price, and time of demand, could be made certain by evidence offered to a jury, and according to the truth, as it might be found, even after doubtful or contradictory evidence, would interest be calculated.
In recoveries upon bonds, where assessment is made under the Act of 1792, it depends upon the nature of the covenant, or thing to which the obligor is bound, and thence upon the nature of the recovery, whether the Act of 1815 is applicable. We must distinguish between cases where the law in a certain state of facts found to exist, requires the jury to take interest as the measure of damages, and other cases in which, within reasonable bounds of discretion, a greater or less measure may be adopted by the jury. If from the pleadings and verdict, or from the verdict alone unimpeached, it appears that interest eo nomine has been adopted as the measure prescribed by the law, then we may conclude that the state of facts was found to be such as required the jury to take that measure ; and we are not at liberty, simply because the bond was not a mere money bond, to presume that a demand was not an interest-bearing demand, which has been found, and properly found, to have borne interest before the verdict.
In debt, upon an administration bond, the bond is not a money bond, and it must be submitted to a jury for assessment of the sum actually due: the decree of the Ordinary is evidence and only evidence of the quantum of this sum due, or damages as generally called: yet a jury, satisfied of the truth . of the decree, has no right to take any other measure of damages ; and I believe no hesitation has in practice ever prevailed in collecting, under the Act of 1815, interest after judgment upon the principal sum of the damages assessed according to the decree. In like manner, in an action upon a sheriff’s bond, where the non-payment of money collected is suggested as a breach, the sum collected with interest from the time of demand, when the sum and the time have been ascertained by a jury, constitutes a measure of damages which cannot be departed from; and after judgment, as before it, the principal sum ascertained by the jury bears interest.
On the other hand, if a bond is for the performance of covenants requiring acts to be done or forborne, the breach of which is not capable of appreciation by any exaet calcula *446 tion, after all the facts have been ascertained: — wherever neither the writing nor other evidence shews a violation of obligation by neglect to pay when the debtor knew how much and when to pay, — interest eo nomine is not allowed by law before verdict: — the finding of it in that form would be corrected or treated asa nullity, and of course the collection of it after judgment is not authorized. Thus if a bond with sureties is given by a carrier for the safe delivery of goods which are not appraised: — after breach a jury would from evidence ascertain the value of the goods, and might in their jury room calculate interest on the value from the time delivery should have been made until the verdict, and assess the damages at the aggregate of value and interest thus calculated: — but if the verdict returned should be for a sum certain with interest from a day past, the defendant might procure a remitter as was done in Ancrum and ¿Sloan; and if the verdict should be for the aggregate “ of which (a certain sum, being the value) shall bear interest from this day of verdict,” the words concerning interest might after proper proceeding be rejected as surplusage.
In debt upon bond for the performance of covenants, the same rules as to interest apply which would be applicable to an action of covenant, brought upon the covenants, if they are contained in a separate obligation. Wherever interest eo nomine is before judgment allowed to attach to a principal as an incident, interest after judgment may be collected— provided that the quantum of the principal sum, and the fact of its having borne interest before judgment, appear with certainty from the verdict or other proceeding in the case. A covenant to pay or answer for a sum certain at a particular time constitutes a debt which may be recovered in an action of debt: but recovery of the same amount, under the name of damages, may be had in an action of covenant. A covenant to do an act, the breach of whiGh is measured by an exact rule, bears interest before judgment, and interest may be collected afterwards -. — (for knowing of the breach, the covenant- or knows how much principal and with interest from what day he should pay,) as a covenant to warrant title, the breach of which is measured by the price with interest from the time it was paid.
In various other cases of damages to be judged of according to circumstances, as well as in debt upon those bonds “ for things other than the payment of money,” of which the breach is incapable of exact measure, a jury may resort to a calculation of interest in framing their verdict; as in trover, interest on the value may be taken as the measure of hire:— but in every such case, the verdict must be for a fixed sum, and interest, eo nomine, although found, might be got rid of. Sometimes, where it can be perceived by the Court that in *447 addition to the damages which the evidence established, a jury has calculated interest in a case where the law does allow interest, although a round sum is found and no interest eo nomine is visible, a remitter will be ordered ; as was done in the case of Farrand v. Bouchell. This was in effect only holding, in a case that did not admit of damages beyond the exact proof, that the damages found were higher than the evidence warranted.
Harp- '
3McC. 166.
But although it is a question of law whether in a given case interest shall be allowed, it often happens that some fact which decides the complexion of the case, and with it the question of interest, rests with the jury, and can be known only from their verdict giving or rejecting interest. Thus, if a promise to pay interest be alleged in an action on an open account for goods sold, and evidence of the promise be offered, the verdict, which fixes t.he sum of the account, if it finds interest shews that the promise has been established. After the verdict all proper instructions will be presumed to have been given to the jury: and if interest be found, and the verdict be in no way set aside or altered, and the presumption be not rebutted by the nature of the action or the proceedings therein, it will be presumed that the facts authorized the finding, and that the interest, which was found, was allowed by law before judgment, and may be collected after judgment.
In the case which is before us, the condition relates to money advanced to be disbursed and accounted for: if the pleadings had been correct the breach assigned would probably have been the neglect to pay a sum of money, which upon accounting had been found due from Bowie to the plaintiff. The verdict finding interest eo nomine was received on the Circuit, and has been sustained in the Court of Appeals— where it may be observed that, of the interest subsequent to the verdict, at least so much as accrued between the verdict and judgment, was actually involved in the point decided. The verdict then established that “ the debt or damages” consisted of money withheld under circumstances that imposed by law the duty of paying interest. <! The cause of action” is then shewn to have been “ interest bearingand of course interest on its principal sum may be collected until satisfaction be made.
The case of Thomas v. Wilson is supposed to be hostile to the conclusion here attained. Some of the argument of that case is so, but not the case itself: for there the judgment was rendered before the Act of 1815, and the verdict seems to have been for $500, without any mention of interest. What was the nature of the covenants there does not appear. It is there said that “ the Act of 1792 precludes the idea that bonds conditioned for the performance of covenants were contemplated by the Act of 1815, because the words of the Act *448 of 1792 are “ which jury shall assess and fix the debt or damages actually due, and the execution shall be levied ac- ' cor dinglyP If accordingly, (as seems to be argued,) the execution cannot be levied for more. The object of the Act of 1792 was “to prevent unnecessary suits in Equity” — the assessment and levy according to it were the easy means provided of chancering the penalty. The subsequent Act of 1815 modified the levy by authorizing it to be extended also to the interest which shall accrue “ up to the day on which such levy shall be made.”
The motion is dismissed.
Richardson, J. — O’Neall, J. — Evans, J. — and Frost, J. concurred.

Motion refused.

 A. A. 1815, 6 Statutes, 4.
An Act to authorize the collection of interest on judgments and decrees, and to remove the necessity of frequent revivals thereof.
Whereas it is reasonable and proper that all judgments and decrees of the Courts of Law and Equity in this State, should bear interest.
I. Be it enacted, by the Honorable the Senate and House of Representatives, now met and sitting in General Assembly, and by authority of the same, That all judgments and decrees ofthe Courts ofLaw or Equity of this State, hereafter to be obtained and rendered on way bond, judgment, bill, promissory note, or other cause of action bearing interest, the principal sum of the judgment, bond, bill, promissory note, or other cause of action, on which such judgment shall be so obtained and rendered, shall continue to bear the same interest as the original cause of action did bear before the entry of judgment thereon; and in the body of every execution hereafter to be issued on such judgment or decree, the sheriff or other officer who may be required to execute the same, shall be directed, by virtue of such execution, to levy the interest which shall accrue on the principal of said debt, obligation or other security on which the judgment or decree has or may be had or rendered, up to the day on which such levy shall be made, and satisfaction entered on said execution,